UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

EMILY MARIE HADJIOSMANOF,    )
    )    Case No. 1:19CV237
    Plaintiff,    )
    )
    v.    )    MAGISTRATE JUDGE DAVID A. RUIZ
    )
COMMISSIONER OF SOCIAL    )
SECURITY,    )
    )
    Defendant.    )    MEMORANDUM AND ORDER

Plaintiff Emily Marie Hadjiosmanof ("Hadjiosmanof" or "claimant") challenges the final decision of Defendant Commissioner of Social Security ("Commissioner"), denying her application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(i), 423, 1381 *et seq*. ("Act"). This court has jurisdiction pursuant to 42 U.S.C. § 405(g), and this case is before the undersigned United States Magistrate Judge pursuant to consent of the parties. For the reasons set forth herein, the Commissioner's final decision is affirmed.

## I. PROCEDURAL HISTORY

On July 9, 2012, Hadjiosmanof filed an application for SSI benefits, alleging disability beginning June 30, 2012. (R. 8, Transcript ("tr."), at 14, 196-199, 227-239.) Hadjiosmanof's application was denied initially and upon reconsideration. *Id.* at 14, 77-91, 92-106. Thereafter,

Hadjiosmanof filed a request for a hearing before an administrative law judge ("ALJ"). *Id.* at 124-125. The ALJ held the hearing on January 17, 2014. (R. 8, tr., at 32-53.) Hadjiosmanof appeared at the hearing, was represented by counsel, and testified. (*Id.* at 34, 38-48.) A vocational expert ("VE") also testified via telephone. (*Id.* at 35, 48-52.) On February 28, 2014, the ALJ determined that Hadjiosmanof was not disabled. (R. 8, tr., at 14-25; *see generally* 20 C.F.R. § 416.920(a).) The Appeals Council ("AC") denied Hadjiosmanof's request for review, thereby rendering the ALJ's decision the final decision of the Commissioner. (R. 8, tr., at 1-4.)

On June 4, 2015, Hadjiosmanof sought judicial review of the denial of benefits. *See generally Hadjiosmanof v. Commissioner of Soc. Sec.*, No. 1:15CV1129 (N.D. Ohio filed June 4, 2015). On February 3, 2016, the parties filed a joint motion to remand the case, which the district court granted. (R. 8, tr., at 975-977; *see Hadjiosmanof v. Commissioner of Soc. Sec.*, No. 1:15CV1129 (N.D. Ohio Feb. 4, 2016) (Order).) Based on the district court's order, the AC remanded the case back to an ALJ on December 23, 2016, and directed the ALJ to evaluate opinion evidence by treating physician John Walker, M.D. *Id.* at 982-984. In addition, the AC directed the ALJ to further consider the claimant's Residual Functional Capacity ("RFC") and to provide specific references to record evidence in support of assessed limitations. *Id.* at 984-985. The AC also ordered Hadjiosmanof's remanded claim consolidated with claimant's subsequently filed May 20, 2015, claim for benefits. *Id.* at 985.

On remand, a different ALJ held a second hearing on June 8, 2017. (R. 8, tr., at 888-930.) Hadjiosmanof appeared at the hearing, was represented by counsel, and testified. (*Id.* at 890, 897-910, 927-928.) An impartial medical expert (*id.* at 890, 911-917) and a vocational expert ("VE") also testified at the hearing (*id.* at 890, 917-927). On July 31, 2017, the ALJ

issued the second decision, and concluded Hadjiosmanof was not disabled.  (R. 8, tr., at 860-872; *see generally* 20 C.F.R. § 416.920(a).)  The AC denied Hadjiosmanof's request for review, thereby rendering the second ALJ decision the Commissioner's final decision.  (R. 8, tr., at 840-845.)  Hadjiosmanof's complaint seeks judicial review pursuant to 42 U.S.C. § 405(g).  The parties have completed briefing, and Hadjiosmanof asserts the ALJ erred in weighing opinion evidence and determining her RFC.  (R. 11-1, PageID #: 2056.)

## II.  RELEVANT MEDICAL EVIDENCE[1]

### A.  Medical Record

Hadjiosmanof applied for SSI benefits on July 9, 2012, as noted above, alleging disability beginning June 30, 2012.  (R. 8, tr., at 14, 196-199.)  She identified the physical and mental conditions that limit her ability to work as: "phonological disorder,[2] learning disability, mild depression, dysthymic disorder, mild-major depressive disorder, panic disorder, anxiety disorder, osteoarthritis, asthma, chronic sinusitis, anemia."  *Id.* at 228.

On June 26, 2012, Hadjiosmanof was involved in a motor vehicle accident, and transported to Medina Hospital via EMS.  (R. 8, tr., at 450-457.)  Three days later, on June 29, 2012, she began treating with John Walker, M.D.  *Id.* at 488-490.  Dr. Walker noted that

---

[1]  The ALJ's decision includes an extensive five-page single space discussion of the objective medical evidence, diagnostic tests, clinical findings, and Hadiosmanof's physical and mental treatment history.  (R. 8, tr., at 866-871.)  The summary of relevant medical evidence included herein is not intended to be exhaustive.  It includes only those portions of the record cited by the parties and also deemed relevant by the court to the assignments of error raised.

[2]  Phonological Disorder is a speech disorder, occurring in children before age four, characterized by "difficulty producing readily-understandable speech."  *Taber's Cyclopedia Medical Dictionary* 691 (23rd ed. 2017); *see also Dorland's Illustrated Medical Dictionary* 552 (32nd ed. 2012); *Diagnostic and Statistical Manual of Mental Disorders*, 315.39 (4th ed. 1994) (DSM-IV) ("failure to use developmentally expected speech sounds").

3

Hadjiosmanof reported continuing shoulder, neck, and back pain since the accident, along with decreased cervical range of motion (ROM). *Id.* at 488. The doctor reported that cervical, thoracic, and lumbar X-rays taken on the day of the accident were normal. *Id.* On physical examination, Dr. Walker found tenderness in the neck, thoracic spine, and lumbar spine, with abnormal ROM in these same areas. (R. 8, tr., at 489.) Hadjiosmanof walked with kyphotic posture, had decreased cervical rotational ROM and flexion, and had shoulder joint tenderness. *Id.* There was no other tenderness or decreased ROM in her arms or legs. *Id.* at 489-490. Dr. Walker assessed cervical neck strain (whiplash) and prescribed naproxen, flexiril and vicodin, plus physical therapy. *Id.* at 490.

Hadjiosmanof returned to Dr. Walker on July 10, 2012, to "discuss being placed on Social Security for Phonological Disorder and [osteoarthritis]." (R. 8, tr., at 485.) She reported "difficulty conveying her thoughts through speech and difficulty understanding people and instructions." *Id.* She also reported osteoarthritis limited her movements. *Id.* On July 11, 2012, Dr. Walker completed a Medical Source Statement of the claimant's physical capacity. (R. 8, tr., at 481-482.) Dr. Walker indicated that Hadjiosmanof was capable of lifting or carrying ten pounds occasionally, and fifteen pounds frequently. *Id.* at 481. She was capable of standing or walking a total of three hours of an 8-hour workday, 1.5 hours without interruption, but her ability to sit was not affected by her impairment. *Id.* The doctor indicated that she could frequently kneel or crawl; occasionally climb, balance, stoop, or crouch; frequently push or pull; occasionally reach, but rarely handle, feel, or use fine or gross manipulation; she would need added rest breaks and environmental restrictions limiting moving machinery and temperature extremes. *Id.* at 481-82. Dr. Walker indicated that claimant had a prescribed brace, she would

need an at-will sit/stand option, and experienced severe pain. (R. 8, tr., at 482.) He noted that Hadjiosmanof was diagnosed with Phonological Disorder as an infant, which would interfere with her ability to work because "[t]his medical condition greatly limits her ability to understand and carry out instructions due to her not being able to understand clearly." *Id.*

On September 4, 2012, state agency consulting physician Jeffrey Vasiloff, M.D., completed a "Physical Residual Functional Capacity Assessment." (R. 8, tr., at 86-88.) Dr. Vasiloff determined Hadjiosmanof was capable of light work (as defined in 20 CFR 416.967(b), that is, lifting no more than 20 pounds at a time, with frequent lifting of up to 10 pounds), with the ability to stand or walk six hours, and the ability to sit for about six hours, of an eight-hour workday. *Id.* at 86. Dr. Vasiloff opined that Hadjiosmanof can occasionally climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can occasionally stoop, kneel, crouch, or crawl; and should avoid concentrated exposure to hazards such as machinery or heights. *Id.* at 86-88.

On October 11, 2012, Pulmonologist Ralph White, M.D., completed a Medical Source Statement regarding claimant's physical capacity. (R. 8, tr., at 836-837.) Dr. White indicated that Hadjiosmanof was capable of standing or walking a total of one hour of an 8-hour workday, but her ability to sit was not affected by her impairment. *Id.* at 836. The doctor indicated that the claimant could occasionally balance, stoop, or kneel, but rarely climb, crouch, or crawl; frequently handle, feel, or use fine manipulation; occasionally reach, push or pull, and use gross manipulation; and would need environmental restrictions regarding heights, moving machinery, temperature extremes, chemicals, dust and fumes. *Id.* at 837. Dr. White noted that claimant's asthma was very sensitive and she had been prescribed a breathing machine. *Id.*

State agency reviewing psychologist Kristen Haskins, Psy.D., determined on October 31, 2012, that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.04 (Affective Disorders). (R. 8, tr., at 84 (psychiatric review technique, "PRT").) Under the "B" criteria for these Listings, Dr. Haskins assessed mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. *Id.*

On November 26, 2012, Maria Nolan, PT, completed an updated functional capacity evaluation ("FCE")[3] that Paul T. Hogya, M.D. also signed. (R. 8, tr., at 783.) PT Nolan determined that Hadjiosmanof was capable of frequently lifting or carrying 10 pounds; frequent standing; constant sitting; and occasional reaching, bending or stooping in a work environment. *Id.* She had a low ability to climb, and medium ability in finger and manual dexterity. *Id.* PT Nolan stated that "Ms. Hadjiosmanof demonstrated an overall lack of cooperation and self-imposed restrictions with functional testing," and "her performance was not substantiated fully by objective findings." *Id.* PT Nolan opined:

> In our professional opinion, she is minimally capable of full-time employment in most jobs that require SEDENTARY physical demands and at least a partial range of jobs that require LIGHT physical demands, with additional stipulation of no more than FREQUENT standing during an 8-hour work shift or CONSTANT standing during a more limited 5-hour work shift.

*Id.*

On reconsideration, state agency reviewing physician Elizabeth Das, M.D., determined on January 23, 2013, that Hadjiosmanof was capable of light work, with the ability to stand or walk about six hours, and the ability to sit for six hours, of an eight-hour workday. (R. 8, tr., at

---

[3] An earlier FCE had been completed on July 25, 2012. *See* R. 8, tr., at 470-474.

101.)  Dr. Das agreed with Dr. Vasiloff's RFC assessment, but added additional environmental

limitations.  *Id.* at 101-103.  Dr. Das opined that Hadjiosmanof should avoid concentrated

exposure to extreme heat or cold, wetness, humidity, and hazards such as machinery or heights,

due to a history of asthma.  *Id.* at 102-103.

On January 23, 2013, state agency reviewing psychologist, Caroline Lewin, Ph.D., also

determined on reconsideration that a medically determinable impairment was present that does

not precisely satisfy the diagnostic criteria for Listing 12.04.  (R. 8, tr., at 99 (PRT).)  Under the

"B" criteria for these Listings, Dr. Lewin assessed mild restriction of activities of daily living,

mild difficulties in maintaining social functioning, and moderate difficulties in maintaining

concentration, persistence or pace.  *Id.*  The doctor adopted the ALJ's March 9, 2011, mental

RFC, pursuant to AR 98-4 (Drummond Ruling).  (R. 8, tr., at 103; *see generally Drummond v.*

*Commissioner*, 126 F.3d 837 (6th Cir. 1997); R. 8, tr., at 57-66.)  Dr. Lewin assessed that

Hadjiosmanof was capable of simple, routine work in a low stress environment, with no quotas

or fast pace; and she can have frequent superficial contact with the public and coworkers.  *Id.*

On January 15, 2014, a counselor at Catholic Charities, Donna Bonvissuto,[4] who began

treating Hadjiosmanof in June 2009, completed a Medical Source Statement of the claimant's

physical capacity.  (R. 8, tr., at 725, 838-839.)  The counselor indicated that the claimant could

frequently maintain regular attendance and punctuality, and work in coordination with or

proximity to others without being distracted or distracting.  *Id.* at 838.  She could occasionally

make occupational adjustments such as following work rules, using judgment, maintaining

---

[4]  The correct spelling is Ms. Bonvissuto (*see* R. 8, tr., at 713-714), although the parties (and the
ALJ) identify her as "Bonvissvio."

attention and concentration, and completing a normal workday and work week without interruption from psychologically-based symptoms.  *Id.*  Regarding claimant's intellectual functioning, the counselor indicated that claimant would rarely be able to understand, remember and carry out detailed or complex job instructions, and would occasionally be able to understand, remember and carry out simple job instructions.  *Id.* at 839.

On August 3, 2015, state agency consulting physician Elaine M. Lewis, M.D., completed a "Physical Residual Functional Capacity Assessment."  (R. 8, tr., at 98-101.)  Dr. Lewis determined Hadjiosmanof was capable of light work (as defined in 20 CFR 416.967(b), that is, lifting no more than 20 pounds at a time, with frequent lifting of up to 10 pounds), with the ability to stand or walk six hours, and the ability to sit for about six hours, of an eight-hour workday.  *Id.* at 998-999.  The doctor opined that Hadjiosmanof can frequently climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can frequently kneel; and can occasionally stoop, crouch, or crawl; and, she attributed these limits to degenerative changes in the thoracic spine, and an "alleged seizure disorder."  *Id.* at 999.  Dr. Lewis assessed manipulative limitations, restricting bilateral overhead reaching and bilateral gross manipulation, again due to degenerative changes of the thoracic spine; and also found communicative limitations, with no jobs requiring normal hearing, due to asymmetrical sensorineural hearing loss.  *Id.* at 999-1000. The doctor noted Hadjiosmanof should avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation; and, due to alleged seizures, she should avoid all exposure to unprotected heights, dangerous machinery, and commercial driving.  *Id.* at 1000.

Hadjiosmanof presented for a follow-up appointment with psychiatrist F. Gregory Noveske, M.D., at the Nord Center on August 18, 2015, after a hospital visit prompted by

seizures, suicidal thoughts, and depression. (R. 8, tr., at 1424-1428, 1579.) The claimant reported episodic depressive symptoms, *id.* at 1424, and the doctor noted she appeared "somewhat depressed and anxious." *Id.* She was diagnosed with Major Depressive Disorder; with anxious distress. *Id.* at 1426. The treatment recommendations included services to assist the claimant with coping skills, and to assist her with processing life events; medication evaluation to treat symptoms; and individual counseling. *Id.* Dr. Noveske assessed the mental status examination as unremarkable in most areas. *Id.* at 1426-1427. Claimant's demeanor was noted as average, and her speech was clear, with no indications of abnormal thought content or perception. *Id.* Her thought process was logical, with average intelligence, fair insight and judgment, and the doctor assessed a moderate impairment of attention and concentration. *Id.* at 1427. Claimant's mental status was alert and oriented x3, with euthymic mood and full affect. *Id.* at 1428.

On October 5, 2015, state agency reviewing psychiatrist Sally Varghese, M.D., determined that a medically determinable impairment was present that did not satisfy the diagnostic criteria for Listing 12.04 (Affective Disorders). (R. 8, tr., at 996 (psychiatric review technique, "PRT").) Under the "B" criteria for these Listings, Dr. Varghese assessed mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. *Id.* Dr. Varghese also completed a mental residual functional capacity assessment, which found that Hadjiosmanof was moderately limited in her ability to understand and remember detailed instructions, but she retained the ability to perform simple routine tasks. (R. 8, tr., at 1001-1003.) Hadjiosmanof was also moderately limited in her ability to carry out detailed instructions, maintain attention and

concentration for extended periods, and complete a normal workday and workweek without interruptions from psychologically based symptoms. *Id.* at 1001-1002. Claimant retained the ability to perform simple routine tasks that do not require a fast pace. *Id.* at 1002. The doctor also found Hadjiosmanof moderately limited in her ability to interact appropriately with the general public, accept instructions and respond appropriately to criticism from supervisor. *Id.* The claimant retained the ability to have superficial contact with the general public, coworkers and supervisors. *Id.* Dr. Varghese opined that claimant is moderately limited in her ability to respond appropriately to changes in the work setting, although she retains the ability to adjust to infrequent changes in the workplace. *Id.* at 1002-1003.

On December 10, 2015, Hadjiosmanof presented for a consultative psychological examination with psychologist Thomas Evans, Ph.D. (R. 8, tr., at 1534-1538.) Dr. Evans based his evaluation on the clinical interview and notes from March 2015, in which claimant reported the nature of her disability was "all the health issues." *Id.* at 1534. She reported arthritis, asthma, hypothyroidism, seizure disorder, high blood pressure, and degenerative disc disease in the lumbar region, and a voluntary psychiatric hospitalization in July 2015 due to suicidal ideation, but did not remember much because she was having seizures. *Id.* at 1535. She reported never being under the care of a psychiatrist, although she received mental health counseling. *Id.* She has longstanding depression, with symptoms of depressed mood, fatigue, and no motivation, but denied suicidal ideation. *Id.* at 1535-1536.

Dr. Evans noted that claimant's conversation was normal; her speech had normal rhythm, rate and volume; and there was no evidence of an articulation disorder. (R. 8, tr., at 1536.) Her speech was understandable at all times; and her mood and affect were observed as euthymic. *Id.*

No anxiety, psychosis, or other abnormal mental health was evident, and she was oriented to person, place and time. *Id.* The psychologist concluded that the claimant meets the diagnosis for Persistent Depressive Disorder, Moderate. *Id.* at 1537. She had been on psychotropic medication briefly, but was not currently taking such medication. *Id.*

Dr. Evans' functional assessment was that claimant would have no difficulties understanding and carrying out simple to moderately complex instructions in a work setting. (R. 8, tr., at 1537.) She displayed good attention and concentration, and was able to maintain focus without any difficulty, although she had trouble recalling three words after a five minute delay. *Id.* at 1537-1538. Claimant reported no difficulties with supervisors or coworkers; nor had her mood affected her ability to handle workplace stress, once she was on site. *Id.* at 1538. At times, however, she reported taking sick leave when she was too depressed to go to work. *Id.*

On January 15, 2016, state agency reviewing psychologist, Juliette Savitscus, Ph.D., determined on reconsideration that a medically determinable impairment was present that does not precisely satisfy the diagnostic criteria for Listing 12.04. (R. 8, tr., at 1014 (PRT).) Under the "B" criteria for these Listings, Dr. Savitscus assessed mild restriction of activities of daily living, mild difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence or pace. *Id.* at 1014-1015. The psychologist also completed a mental RFC assessment that found Hadjiosmanof moderately limited in her ability to understand and remember detailed instructions, but she retained the ability to perform simple routine tasks of one to three steps. (R. 8, tr., at 1019-1021.) Dr. Savitscus agreed with Dr. Varghese and assessed the same limitations in concentration and persistence, as referenced above. *Id.* at 1020. The psychologist did not find that claimant had any social interaction

limitations, noting that she denied problems in getting along with others. *Id.* at 1021. Dr. Savitscus opined that claimant is moderately limited in her ability to respond appropriately to changes in the work setting, although she retains the ability to adjust to infrequent changes in the workplace. *Id.* at 1021.

On reconsideration, dated January 18, 2016, Gary Hinzman, M.D., completed a Physical RFC, which assessed the same limitations as Dr. Lewis, referenced above. (R. 8, tr., at 1016-1019.)

On March 23, 2017, Hadjiosmanof saw Jibran Ahmed, M.D. for a consultative physical examination. (R. 8, tr., at 1732-1738.) She reported a medical history involving depression, hyperthyroidism, a non-epileptic seizure disorder, osteoarthritis of the spine, and a history of uterine cancer. *Id.* at 1732. Her primary physical complaint was back pain, that improves with rest, and does not radiate. *Id.* Dr. Ahmed noted that claimant had no issues with gait or heel to toe walk, and she walked with good stability using a cane. *Id.* at 1733. On physical exam, the doctor found no issues with speech pattern, memory and fine motor skills. *Id.* The physical exam was largely within normal limits, with a full range of motion and full strength in her arms and legs. *Id.* The cervical and thoracic spine exams showed no significant findings, but there was mild tenderness to palpitation in the lumbar spine. *Id.* Dr. Ahmed opined that the claimant seemed "to have more issues with psychiatric conditions such as her depression[,]" and deferred to her psychiatrist's evaluation in that regard. *Id.* at 1734.

Based on the consultative exam, Dr. Ahmed completed a Medical Source Statement, on April 6, 2017, regarding claimant's physical capacity. (R. 8, tr., at 1725-1730.) Dr. Ahmed assessed that Hadjiosmanof was capable of lifting up to ten pounds frequently and up to twenty

pounds occasionally, and capable of carrying up to ten pound occasionally. *Id.* at 1725. Dr. Ahmed indicated that Hadjiosmanof was capable of sitting for a total of five hours of an 8-hour workday (three hours at a time); standing a total of two hours of an 8-hour workday (one hour at a time); and, walking for a total of one hour of a workday. *Id.* at 1726. The doctor stated that the use of a cane to walk was not medically necessary, although claimant voluntarily used a cane for stability. *Id.*

According to Dr. Ahmed, Hadjiosmanof displayed no significant fine motor deficits on examination, and she was capable of frequently reaching, handling, fingering, feeling, and pushing or pulling with both hands. (R. 8, tr., at 1727.) She could frequently operate foot controls with either foot. *Id.* The doctor indicated that the claimant could never climb stairs, ramps, ladders or scaffolds, but could occasionally balance, stoop, kneel, crouch, or crawl. *Id.* Dr. Ahmed marked that the claimant had no impairments that affected her hearing or vision. *Id.* at 1728. Hadjiosmanof could never tolerate exposure to unprotected heights, or operating a motor vehicle; she could have occasional exposure to extreme heat or cold; and she could have frequent exposure to moving mechanical parts, humidity, wetness, dust, odors, fumes, or vibrations. *Id.* at 1729. Dr. Ahmed assessed no limitations in claimant's ability to take part in daily activities such as shopping, traveling, and preparing meals. *Id.* at 1730.

B.  Hearing Testimony

During the January 2014 hearing, Hadjiosmanof testified that lower back osteoarthritis caused pain and numbness in her legs and limited her ability to work. (R. 8, tr., at 40-41.) She also identified asthma, and limited motion in her left shoulder. *Id.* at 41. Hadjiosmanof did not

mention any speech disorder [phonological disorder], nor was one referenced in the hearing transcript. *See generally id.* at 38-48.

During the June 2017 hearing, Hadjiosmanof testified that she could not return to work because of physical pain from standing. (R. 8, tr., at 899, 901.) She further testified that pain caused her to remain in bed on some days, as well as severe depression. *Id.* at 902. She also stated that she could not go out alone due to a seizure disorder. *Id.* at 903-904. She did not mention a speech disorder. *See generally id.* at 897-910. Also during the 2017 hearing, a medical expert, Dr. Clock, testified that the record supported the following medically determinable impairments: morbid obesity; lumbar scoliosis; degenerative disc and degenerative joint disease in the thoracic and lumbar spine; and minimal left shoulder impingement syndrome. (R. 8, tr., at 912.).

The ALJ questioned the VE during the hearing to determine "whether jobs exist in the national economy for an individual with the claimant's age, education and work experience, and residual functional capacity." *Id.* at 872, 919. The VE identified such person could "perform the requirements of representative occupations such a housekeeper (DOT# 323.687-014, 135,000 jobs nationally), a food service worker (DOT# 311.677-010, 102,000 jobs nationally), and a mail clerk (DOT# 209.687-026, 50,000 jobs nationally)." *Id.* at 872, 919-920.

### III. ALJ's DECISION

The ALJ made the following findings of fact and conclusions of law in the July 31, 2017, decision:

> 1. The claimant has not engaged in substantial gainful activity since July 9, 2012, the application date (20 CFR 416.971 *et seq.*).

2.  The claimant has the following severe impairments: depression, personality disorder, asthma, morbid obesity, osteoarthritis, degenerative disc disease, left shoulder impingement syndrome, sleep apnea, scoliosis, headaches/non-intractable migraines, phonological disorder, and non-epileptic seizures (20 CFR 416.920(c)).

3.  The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925, and 416.926).

4.  After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) with occasionally lifting and carrying up to 20 pounds and frequently lifting and carrying 10 pounds; sitting for 6 hours in an 8-hour workday; standing/walking for 6 hours in an 8-hour workday; pushing and pulling as much as she can lift and carry; never reaching overhead with the left [arm]; never climbing ladders, ropes, and scaffolds; occasionally climbing of ramps and stairs; occasional balancing, stooping, kneeling, crouching, and crawling; never working around unprotected heights, moving mechanical parts, or operating a motor vehicle; occasional exposure to humidity or wetness, dusts, odors, fumes, and other pulmonary irritants, and occasional exposure to extreme heat or cold; limited to the production of simple, routine, and repetitive tasks, but not at a production rate pace, such as assembly line work; can have frequent exposure to co-workers and supervisors; can have occasional exposure to the public; and limited to tolerating few changes in a routine work setting.

5.  The claimant has no past relevant work (20 CFR 416.965).

6.  The claimant was born on *** 1980, and was 31 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7.  The claimant has at least a high school education and is able to communicate in English (20 CFR 416.964).

8.  Transferability of job skills is not an issue because the claimant does not have past relevant work (20 CFR 416.968).

9.  Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969, and 416.969(a)).

10. The claimant has not been under a disability, as defined in the Social Security Act, since July 9, 2012, the date the application was filed (20 CFR 416.920(g)).

(R. 8, tr., at 862, 863, 865, 871, 872.)

## IV. DISABILITY STANDARD

A claimant is entitled to receive SSI benefits only when she establishes disability within the meaning of the Social Security Act. *See* 42 U.S.C. §§ 423, 1381. A claimant is considered disabled when she cannot perform "substantial gainful employment by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 416.905(a).

Social Security Administration regulations require an ALJ to follow a five-step sequential analysis in making a disability determination. *See* 20 C.F.R. § 416.920(a); *Heston v. Commissioner of Social Security*, 245 F.3d 528, 534 (6th Cir. 2001). The Sixth Circuit has outlined the five steps as follows:

> First, the claimant must demonstrate that he has not engaged in substantial gainful activity during the period of disability. 20 C.F.R. § 404.1520(a)(4)(i). Second, the claimant must show that he suffers from a severe medically determinable physical or mental impairment. *Id.* § 404.1520(a)(4)(ii). Third, if the claimant shows that his impairment meets or medically equals one of the impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1, he is deemed disabled. *Id.* § 404.1520(a)(4)(iii). Fourth, the ALJ determines whether, based on the claimant's residual functional capacity, the claimant can perform his past relevant work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(iv). Fifth, the ALJ determines whether, based on the claimant's residual functional capacity, as well as his age, education, and work experience, the claimant can make an adjustment to other work, in which case the claimant is not disabled. *Id.* § 404.1520(a)(4)(v).

> The claimant bears the burden of proof during the first four steps, but the burden shifts to the Commissioner at step five. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

*Wilson v. Commissioner of Social Security*, 378 F.3d 541, 548 (6th Cir. 2004); *see also* 20 C.F.R. § 416.920(a)(4).

## V.  STANDARD OF REVIEW

Judicial review of the Commissioner's benefits decision is limited to determining whether the ALJ applied the correct legal standards, and whether substantial evidence supports the ALJ's findings.  *Blakley v. Commissioner of Social Security*, 581 F.3d 399, 405 (6th Cir. 2009)*; Richardson v. Perales*, 402 U.S. 389, 401 (1971).  "Substantial evidence" has been defined as more than a scintilla of evidence, but less than a preponderance of the evidence.  *Wright v. Massanari*, 321 F.3d 611, 614 (6th Cir. 2003); *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981).  Thus, if the record evidence is of such a nature that a reasonable mind might accept it as adequate support for the Commissioner's final benefits determination, then that determination must be affirmed.  *Wright*, 321 F.3d at 614; *Kirk*, 667 F.2d at 535.

The Commissioner's determination must stand if supported by substantial evidence, regardless of whether this court would resolve the issues of fact in dispute differently, or substantial evidence also supports the opposite conclusion.  *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986).  This court may not try the case *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).  The court, however, may examine all the evidence in the record, regardless of whether such evidence was cited in the Commissioner's final decision.  *See Walker v. Sec'y of Health & Human Servs.*, 884 F.2d 241,

245 (6th Cir. 1989); *Hubbard v. Commissioner*, No. 11-11140, 2012 WL 883612, at *5 (E.D. Mich Feb. 27, 2012) (quoting *Heston*, 245 F.3d at 535).

## VI.  ANALYSIS

Hadjiosmanof presents two issues for review: 1) "whether the ALJ erred in weighing opinions, including treating physician, consulting, and other opinions" and 2) "whether the ALJ's determination of plaintiff's residual functional capacity accurately reflected the evidence of record and whether this error is harmless or prejudicial."  (R. 11-1, PageID #: 2056.)

### A.  <u>Treating Physicians</u>

In her first assignment of error, Hadjiosmanof asserts that the ALJ violated the treating physician rule by not giving proper weight and deference to the treating physicians' opinions, and "simply giving significant weight to non-examining, non-treating sources."  (R. 11-1, PageID #: 2070.)  It is well-recognized that an ALJ must generally give greater deference to the opinions of a claimant's treating physicians than to non-treating physicians.[5]  *Shields v. Commissioner*, 732 Fed. Appx 430, 437 (6th Cir. 2018); *Gayheart v. Commissioner*, 710 F.3d 365, 375 (6th Cir. 2013); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544.  This doctrine, often referred to as the "treating physician rule," is a reflection of the Social Security Administration's awareness that physicians who have a long-standing treatment relationship with an individual are often well-suited to provide a complete picture of the individual's health and treatment history. *Shields*, 732 Fed. Appx at 437; *Blakley*, 581 F.3d at 406; 20 C.F.R. § 416.927(c)(2).

---

[5]  Revisions to regulations regarding the evaluation of medical evidence went into effect on March 27, 2017, and apply to the evaluation of opinion evidence for claims filed before March 27, 2017.  82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 416.927 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.")  Plaintiff's claim was filed before March 27, 2017.

The treating physician doctrine requires opinions from treating physicians to be given controlling weight when the opinion is (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and (2) "not inconsistent with the other substantial evidence in the case record." *Gayheart*, 710 F.3d at 376 (citing 20 C.F.R. § 404.1527(c)(2)); *Blakley*, 581 F.3d at 406; *Wilson*, 378 F.3d at 544. In other words, treating physicians' opinions are only given deference when supported by objective medical evidence. *Vance v. Commissioner*, No. 07-5793, 2008 WL 162942, at *3 (6th Cir. Jan. 15, 2008) (citing *Jones v. Commissioner*, 336 F.3d 469, 477 (6th Cir. 2003)). Although the ALJ generally accords more weight, for example, to a treating source over those of a non-examining source, the ALJ is not prohibited from adopting the findings of a non-examining source. *See generally Ealy v. Commissioner*, 594 F.3d 504, 514-515 (6th Cir. 2010); *Smith v. Commissioner*, 482 F.3d 873, 875 (6th Cir. 2007).

Social Security regulations, however, require the ALJ to give good reasons for discounting evidence of disability submitted by the treating source(s). *Shields*, 732 Fed. Appx at 437; *Blakley*, 581 F.3d at 406; *Vance*, 2008 WL 162942, at *3. Those good reasons must be supported by evidence in the case record, and must be sufficiently specific to make clear to subsequent reviewers the weight assigned to the treating source's opinion, and the reasons for that weight. *Gayheart*, 710 F.3d at 376; *Blakley*, 581 F.3d at 406-407. Even when a treating source's opinion is not entitled to controlling weight, an ALJ must still determine how much weight to assign to the opinion by considering specific factors set forth in the governing regulations, namely: the length, frequency, nature, and extent of the treating relationship, as well as the doctor's area of specialty and the degree to which the opinion is consistent with the record

as a whole and is supported by relevant evidence.  *Shields*, 732 Fed. Appx at 437; *Gayheart*, 710 F.3d at 376; 20 C.F.R. § 416.927(c).

Although the ALJ is directed to consider the factors, the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision.  *Francis v. Commissioner*, No. 09-6263, 2011 WL 915719, at *3 (6th Cir. March 16, 2011).  In some cases, even a brief statement identifying relevant factors has been found adequate to articulate good reasons to discount a treating physician's opinion.  *Allen v. Commissioner*, 561 F.3d 646, 651 (6th Cir. 2009).

The Commissioner's final decision subject to judicial review before this court is the second ALJ decision dated July 31, 2017.[6]  *See generally* R. 8, tr., at 860-872.  The 2017 decision addressed the opinions of Dr. Walker and Dr. White as follows:

> No controlling weight is given to the treating source opinion of Dr. Walker (Exh. B5F, pg. 15-16 [R. 8, tr., at 481-482]).  Dr. Walker limited the claimant to a range of sedentary level work, with lifting up to 15 pounds frequently, standing/walking for three hours per workday, no limits in sitting, and various non-exertional restrictions such as no exposure to heights, the need for a sit/stand option, and the need to rest during the workday (Dr. Walker also apparently completed, but did not sign a written statement in Exh. B5F, pg. 2 [R. 8, tr., at 468] noting that the claimant's osteoarthritis limits her duration of sitting and standing, and concluding that her phonological disorder can impair her communication with others).  These opinions are inconsistent with the medical record, including the above noted largely unremarkable diagnostic test results and clinical findings, the claimant's conservative treatment history, and her varied activities of daily living (Exhibit B4F, pg. 2; Exhibit B55F, pg. 2; Exhibit B58F, pg. 13 [R. 8, tr., at 464, 1726, 1829]).  Moreover, Dr. Walker provided little explanation or supporting evidence for his generally extreme physical limitations, and he treated the claimant for only four months before completing his assessment, suggesting a limited treatment relationship.  Therefore, the undersigned gives little weight to this opinion.

---

[6]  At points in her brief, however, the claimant references the first ALJ's July 2014 decision. *See, e.g.*, R. 11-1, PageID #: 2072 (citing R. 8, tr., at 22-23.)

No controlling weight is given to the treating source opinion of Dr. White (Exhibit B8F; B22F [R. 8, tr., at 576, 836-837]). Dr. White limited the claimant to less than sedentary level work, with no limits in sitting, one hour of standing/walking per workday, unspecified limits in lifting, and non-exertional restrictions such as rarely climbing, occasional balancing and stooping, and the need for a sit/stand option. These opinions are generally inconsistent with the medical record as a whole for the reasons listed above, such as the claimant's largely unremarkable diagnostic test results and clinical findings. In addition, Dr. White provided little supporting evidence or explanation aside from largely restating the claimant's subjective allegations, which are not fully consistent with the record as a whole for the reasons listed above. Nevertheless, some of Dr. White's non-exertional limitations have been adopted above, such as occasional balancing and stooping. Therefore, the undersigned gives little weight to this opinion.

(R. 8, tr., at 869-870.)

Hadjiosmanof acknowledges the ALJ recognized both Dr. Walker and Dr. White as treating physicians, but she contends the decision "fails to analyze the relevant factors in the SSA regulation" specifically citing 20 C.F.R. § 404.1527(d)(2). (R. 11-1, PageID #: 2072.) Although the regulatory factors are the same, the relevant regulation is 20 C.F.R. § 416.927(c), as this is a claim for SSI benefits (R. 8, tr., at 196). After considering the parties' arguments, the ALJ's decision and the underlying record, the court finds that the ALJ's decision adequately considered the pertinent regulatory factors and substantial evidence supports the ALJ's consideration of the opinion evidence, as explained herein.

The ALJ evaluated Dr. Walker as a treating source, and noted the doctor had treated claimant "for only four months before completing his assessment, suggesting a limited treatment relationship." (R. 8, tr., at 869-870; *see* 20 C.F.R. § 416.927(c)(2)(i).) The ALJ found that Dr. Walker's opinion was inconsistent with the medical record, and supported that conclusion with specific examples and citations to the medical record evidence. *Id.* at 870; *see* 20 C.F.R. §416.927(c)(4). In addition, the ALJ noted that Dr. Walker's opinion "provided little

explanation or supporting evidence for his generally extreme physical limitations." *Id.*; *see* 20 C.F.R. § 416.927(c)(3). Although the ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision, *Francis*, 2011 WL 915719, at *3, the court finds that the ALJ considered relevant factors such as the length, frequency, nature, and extent of the treating relationship, whether the opinion is supported by relevant evidence, and whether it is consistent with the record as a whole. While the claimant contends that the ALJ did not provide good reasons for the weight given to the treating physician's opinion, R. 11-1, PageID #: 2074-2075, the court finds the ALJ's reasons are supported by citations to evidence in the case record, and are sufficiently specific to make clear the weight assigned to the opinion, and the reasons for that weight.

The same analysis leads to the same conclusion regarding the ALJ's assessment of Dr. White's opinion. The ALJ evaluated Dr. White as a treating source (R. 8, tr., at 870; *see* 20 C.F.R. § 416.927(c)(2)), but cited specific examples in the record when explaining how the doctor's opinion was "generally inconsistent with the medical record as a whole." *Id.* at 870; *see* 20 C.F.R. § 416.927(c)(4). In addition, the ALJ noted that Dr. White's opinion "provided little supporting evidence or explanation aside from largely restating the claimant's subjective allegations, which are not fully consistent with the record as a whole." *Id.*; *see* 20 C.F.R. § 416.927(c)(3). Again, an ALJ is not required to provide an "exhaustive factor-by-factor analysis" in the decision, *Francis*, 2011 WL 915719, at *3, but the decision demonstrates the ALJ considered the relevant factors. Although claimant argues that the ALJ did not provide good reasons for the weight given to this treating physician's opinion, R. 11-1, PageID #: 2074-2075, the court finds that ALJ's analysis is supported by citations to evidence in the case record;

and it is sufficiently specific to make clear the weight assigned to the opinion, and the reasons for that weight.

Claimant's filings also discuss evidence that could support different limitations, but the ALJ's decision must stand if it is supported by substantial evidence, regardless of whether substantial evidence may also support a different conclusion.  *Bass*, 499 F.3d at 509; *Mullen*, 800 F.2d at 545.  The court, therefore, finds the claimant's argument—that the Commissioner erred when considering the opinion evidence from Dr. Walker and Dr. White—is not well-taken.

## B.  Treating Counselor

Hadjiosmanof further argues that the ALJ erred when assigning little weight to the mental RFC statements of her treating counselor, Ms. Bonvissuto.  (R. 11-1, PageID #: 2076-2079.) The ALJ's decision gave little weight to the counselor's opinions, in part because she "is not a psychologist or psychiatrist, and she is therefore not an acceptable medical source to opine on the claimant's mental functioning or abilities."  (R. 8, tr., at 869.)

As the ALJ stated, a counselor is not an "acceptable medical source" within the meaning of the regulations and, therefore, cannot render a "medical opinion."  *Cole v. Astrue*, 661 F.3d 931, 939 (6th Cir. 2011); *Sturdee v. Commissioner*, No. 1:18CV770, 2019 WL 4743836, at *4 (W.D. Mich. Sept. 30, 2019); *Duff v. Commissioner*, No. 5:14CV1293, 2015 WL 2250396, at *3 (N.D. Ohio May 13, 2015); *see also* 20 C.F.R. §§ 416.902(a) (2017) (listing acceptable medical sources), 416.902(j)(3) (2017).  Under the regulations that were in effect at the time that Hadjiosmanof's claim was filed,[7] "medical opinions" are defined as "statements from acceptable

---

[7]  *See generally* 82 *Fed. Reg.* 5844-5884 (Jan. 18, 2017); *see, e.g.*, 20 C.F.R. § 416.927 (2017) ("For claims filed ... before March 27, 2017, the rules in this section apply.")  Incidentally, no

medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(1) (2017).

The claimant relies, in part, on SSR 06-3p, and contends the ALJ improperly disregarded this Ruling. (R. 11-1, PageID #: 2077.) That particular Social Security Ruling, however, was one of several rescinded "effective on March 27, 2017." 82 *Fed. Reg.* 5844, 5845. The ALJ's decision was issued on July 31, 2017, so the Ruling was no longer in force. (R. 8, tr., at 872.) The regulations still provide that the ALJ will evaluate every medical opinion received, 20 C.F.R. § 416.927(c), but as discussed above, Bonvissuto's opinion is not a "medical opinion" under the regulations, 20 C.F.R. §§ 416.902(a), 416.927(a)(1), because she is not an "acceptable medical source." Nonetheless, the regulations also provide that non-medical sources should receive consideration, when assessing the severity of an individual's impairments and the impact those impairments have on the individual's ability to function. 20 C.F.R. § 416.927(f)(1); *Cole*, 661 F.3d at 939; *Cruse v. Commissioner*, 502 F.3d 532, 541 (6th Cir. 2007); *Scroggins v. Commissioner*, No. 15CV10366, 2016 WL 1090375, at *5 (E.D. Mich. Mar. 21, 2016); *Reynolds v. Colvin*, No. 1:12CV2994, 2013 WL 5316578, at *7 (N.D. Ohio Sept. 23, 2013).

The ALJ is not required to accord a non-medical source opinion any special weight or consideration, *see Noto v. Commissioner*, No. 15-1309, 2015 WL 7253050, at *5 (6th Cir. Nov. 16, 2015); *Scroggins,* 2016 WL 1090375, at *5, and she has discretion to assign such evidence any weight deemed appropriate based on the evidence of record. *See generally Noto*, 2015 WL

such language is included in the C.F.R. to authorize the continued application of Social Security Rulings rescinded effective March 27, 2017.

7253050, at *4; *Cruse*, 502 F.3d at 541. However, the ALJ must consider the other source's evidence and determine how much weight to give to it. *Cruse*, 502 F.3d at 541. In evaluating such evidence, the ALJ should consider factors such as the length of the treating relationship, the consistency with other evidence, and how well the source's opinion is explained. *See generally McNamara v. Commissioner*, No. 15-1231, 2015 WL 8479642, at *1 (6th Cir. Dec. 10, 2015) (per curiam); *Cruse*, 502 F.3d at 541; *Reynolds*, 2013 WL 5316578, at *7. While the ALJ is directed to consider these factors, no exhaustive analysis of them is required. *See generally Francis*, 2011 WL 915719, at *3.

The claimant contends that "[n]ot giving weight to other sources simply because they don't meet the traditional definition of a treating source is reversible error." (R. 11-1, PageID #: 2077.) Such an assertion is not persuasive on this record because the ALJ's decision afforded proper consideration to Bonvissuto's opinions, even as it assigned them little weight. Here, the ALJ summarized the pertinent findings from the counselor's statements and analyzed the opinions as follows:

> No controlling weight is given to the treating source opinions of Ms. Donna [Bonvissuto], LPC (Exhibit B12F; pg. 70, B16F; B23F). Ms. [Bonvissuto] completed a daily activities questionnaire in 2012 and two medical source statements. In her daily activities questionnaire, Ms. [Bonvissuto] concluded that the claimant is unable to follow or learn complex job instructions or follow multiple step instructions, she reported being able to get along with others in a workplace, and her daily activities include food preparation, learning, handling personal hygiene, and using the computer and church related activities for hobbies. In both of the medical source statements, Ms. [Bonvissuto] concluded that the claimant can perform most work-related activities on only an occasional basis, such as following work rules, maintaining attention and concentration for extended periods, and working with others while not being distracted. These opinions are inconsistent with the medical record as a whole, including the claimant's mostly limited treatment history with a positive response to psychiatric medications and therapy, and her generally mild reported symptoms to treating and consultative sources, without evidence of hallucinations, delusions,

25

obsessions, compulsions, cognitive disorder, current suicidal/homicidal ideation, or other serious issues (Exhibit B7F; B12F; B36F; B40F; B41F;B42F; B61F). Furthermore, Ms. [Bonvissuto] provided very little supporting evidence for her extreme limitations, aside from simply relisting the claimant's various diagnoses and subjective allegations, which are not fully consistent with the record for the reasons listed above. Ms. [Bonvissuto] is not a psychologist or psychiatrist, and she is therefore not an acceptable medical source to opine on the claimant's mental functioning or abilities. Therefore, the undersigned gives little weight to these opinions.

(R. 8, tr., at 869.) The above excerpt demonstrates that the ALJ considered the relevant factors when evaluating the counselor's opinions; and the decision assigned the weight determined appropriate to the such opinions, based upon a thorough consideration of the evidence of record. *Id.* The court finds that the decision of the Commissioner concerning the weight to assign the opinion evidence from Ms. Bonvissuto is supported by substantial evidence. Consequently, Hadjiosmanof argument to the contrary is not persuasive.

## C. Residual Functional Capacity ("RFC") Determination

Hadjiosmanof claims that the ALJ committed prejudicial error by assessing an RFC that did not accurately reflect the evidence of record. (R. 11-1, PageID #: 2056, 2079-2081.) A claimant's RFC is an indication of an individual's work-related abilities *despite* their limitations. 20 C.F.R. § 416.945(a).[8] The ALJ has the responsibility for reviewing all the evidence in making an RFC determination. 20 C.F.R. § 416.927(b). The ALJ must review and consider all

---

[8] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. Appx 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. Appx. 498, 505 (6th Cir. 2013) (internal citations omitted)).

the evidence before her, but the responsibility for assessing the claimant's RFC remains with the ALJ. 20 C.F.R. § 416.946(c).

According to the claimant, the ALJ consistently gave no weight to the opinions finding her limited to a sedentary capacity. (R. 11-1, PageID #: 2080.) She argues that this is not harmless error, because "had the ALJ properly reviewed all of the evidence instead of only selecting that which supported her non-disability conclusion," the ALJ would have found claimant "substantially more limited," based on the opinions of Dr. Walter, Dr. White, PT Nolan, and Dr. Hogya, which she asserts conclude that Hadjiosmanof is limited to sedentary work. *Id.* The court has already determined that the ALJ properly considered the opinions of Dr. Walter and Dr. White. PT Nolan's November 2012 FCE (which was co-signed by Dr. Hogya), found that claimant was "minimally capable of full-time employment in most jobs that require sedentary physical demands and at least a partial range of jobs that require light physical demands." (R. 8, tr., at 783.). The ALJ considered and discounted PT Nolan's opinion as follows:

> No controlling weight is given to the functional capacity evaluation of Ms. Mari[a] Nolan, PT that was signed by Dr. Hoya, and to the functional capacity evaluation of Mr. Steve Vojtok (Exhibit B5F; pg. 6-8; B19F; pg. 17). Ms. Nolan concluded that the claimant can perform sedentary level work and some light level jobs. Likewise, Mr. Vojtok concluded that the claimant fits in the sedentary strength range classification. These opinions are somewhat consistent with the medical record to the extent that they reveal greater physical functioning than alleged at the hearing, and Ms. Nol[a]n's findings support up to the performance of light level work. However, Ms. Nolan noted that the claimant displayed poor effort upon testing, which raises questions about the validity of her testing results. Mr. Vojtok also noted some inconsistency during his testing, such as concluding that the claimant self-limited herself on material handling tasks without providing maximum effort. In addition, M[r]. Vojtok and Ms. Nolan are not acceptable medical sources to opine on the claimant's physical abilities, or which jobs she could still perform. Therefore, the undersigned gives little to some weight to these opinions.

*Id.* at 870.  The ALJ's RFC (the most claimant can do despite her limitations) assessed claimant

as capable of light work, with limitations, partially supported by PT Nolan's FCE.  *Id.* at 865.

But the ALJ also discounted the PT's opinions because she was not an acceptable medical source

and because PT Nolan stated, "Ms. Hadjiosmanof demonstrated an overall lack of cooperation

and self-imposed restrictions with functional testing," and that "her performance was not

substantiated fully by objective findings."  *Id.* at 783.

       The claimant, further, contends that her level of pain would require additional rest breaks.

(R. 11-1, PageID #: 2080.)  Yet the results of an earlier FCE cast some doubt on that assertion, as

the evaluator reported that claimant "reports such high levels of pain however based on client's

performance with functional tasks it is obvious the client does not have a clear understanding of

the numeric scale[;]" and claimant expressed "severe levels of pain throughout the session

however her physical performance did not correlate with her subjective score."  (R. 8, tr., at 472.)

       The ALJ's decision supported the RFC analysis with an extensive discussion of the

medical evidence of record.  *See* R. 8, tr., at 865-871; *see also* R. 13, PageID #: 2094-2096

(discussing MER cited by ALJ).  Although Hadjiosmanof characterizes the ALJ's decision as

cherry-picking from the evidence, R. 11-1, PageID #: 2080, the court finds it reasonably "can be

described more neutrally as weighing the evidence."  *See, e.g.*, *White v. Commissioner*, 572 F.3d

272, 284 (6th Cir. 2009).  Further, this court may not try the case *de novo*, resolve conflicts in the

evidence, or decide questions of credibility.  *Wright*, 321 F.3d at 614; *Garner*, 745 F.2d 387.

Consequently, the court finds the ALJ's RFC is supported by substantial evidence because the

record evidence as discussed in the ALJ's decision is such that "a reasonable mind might accept

[it] as adequate" support for the that determination.  *See Kirk*, 667 F.2d at 535 (quoting

*Richardson*, 402 U.S. at 401).  Plaintiff's argument claiming the ALJ committed reversible error

is not persuasive.


## VII.  CONCLUSION

For the foregoing reasons, the court finds that the Commissioner's final decision is

supported by substantial evidence and, therefore, it is affirmed.

<u>s/ David A. Ruiz</u>
David A. Ruiz
United States Magistrate Judge


Date:   <u>March 31, 2020</u>